## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES BARKER, CHERI FRITTS,
ARYN DELANEY, individually and on
behalf of similarly situated persons,
                  Plaintiffs,

        v.

STA MANAGEMENT, LLC d/b/a
"Domino's Pizza," AMER ASMAR,
NORTHWEST PROFESSIONALS, LLC,
HAYAT ASMAR, RANDY ASMAR,
RONNIE ASMAR, RDR SERVICES,
LLC, DESIREE ASMAR, FOUNTAIN
OAKS, LLC, PATRICK FISHER, and
DOES 1-10,

               Defendants.

**Case No.**

**Hon.**

**Mag.**

**Jury Demanded**

## COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (FLSA), MICHIGAN WAGE LAW, AND DEMAND FOR JURY TRIAL

Plaintiffs James Barker, Cheri Fritts, and Aryn Delaney ("Plaintiffs"), individually and on behalf of all other similarly situated delivery drivers, bring this Complaint against Defendants STA MANAGEMENT, LLC d/b/a "Domino's Pizza," AMER ASMAR, NORTHWEST PROFESSIONALS, LLC, HAYAT ASMAR, RANDY ASMAR, RONNIE ASMAR, RDR SERVICES, LLC, DESIREE ASMAR, FOUNTAIN OAKS, LLC, PATRICK FISHER, and DOES 1-10, and alleges as follows:

1.      Defendants operate or operated numerous Domino's franchise stores during the applicable statutory period. Defendants employ delivery drivers who use their own automobiles to deliver pizza and other food items to their customers. Defendants do not reimburse delivery drivers for the reasonably approximate costs of the business use of their vehicles, as required by law.  Instead, Defendants use a flawed method to determine reimbursement rates that effectively reduces the drivers' wages below the federal and state minimum wage during some or all workweeks.

2.      Plaintiffs brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and as a class action under the Michigan Complied Laws ("MI Comp L") § 408.471 *et seq.,* to recover unpaid minimum wages and overtime hours owed to themselves and similarly situated delivery drivers employed by Defendants at their Domino's Pizza stores.

3.      Named Plaintiffs were unaware of prior litigation because they did not receive notice and opportunity to opt-in.  Because Plaintiff's lacked notice through no fault of their own, equitable tolling should apply and relate back to the filing of the prior related case in which they should have received notice.  *See Clark v. A&L Homecare* (6th Cir. 22-3101, May 19, 2023) (concurring opinions of Judges Bush and White) (majority of the panel adopting a principle of equitable tolling by analogy to class actions).

**Jurisdiction and Venue**

4.     The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

5.     Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiffs reside in this District, Defendants employed Plaintiffs in this District, Defendants operate Domino's Pizza franchise stores in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

**Parties**

6.     Defendant STA Management, LLC is a Michigan limited liability company, which is located in the Eastern District of Michigan, and may be served via its registered agent Amer Asmar at 29850 Northwestern Hwy, Suite 200, Southfield, MI 48034, or wherever he may be found. Defendant STA Management, LLC, together with its corporate entities and stores, comprise a "single integrated employer," as they share interrelation of operations, common management, centralized control of labor relations, coordination of delivery driver compensation policies, and/or common ownership.

7.     Alternatively or cumulatively, Defendant STA Management, LLC, together with its corporate entities and stores, constitute "joint employers" because the delivery drivers' work simultaneously benefits all Defendants and each

Defendant acts directly or indirectly in the interest of all other Defendants in relation to the delivery drivers and/or Defendants are not completely dissociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, directly or indirectly, by reason of the fact that all Defendants are under common control. 29 C.F.R. § 791.2(b).

8.     Defendant Amer Asmar is an owner of Defendants, served as officer of Defendants, and held managerial responsibilities and substantial control over terms and conditions of Defendants' delivery drivers' work. Further, he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records.

9.     Defendant Northwest Professionals, LLC, is a limited liability company maintaining its principal place of business at 29850 Northwestern Hwy. Ste. 200, Southfield, MI, 48034, which is in the Eastern District of Michigan.

10.     Defendant Hayat Asmar is an owner/member of Defendant corporate entities, served as officer of Defendants, including but not limited to Northwest Professionals, LLC, and held managerial responsibilities and substantial control and responsibility over payroll, reimbursement terms and conditions for delivery drivers' work.

11.     Defendant Randy Asmar is an owner/member of Defendant corporate

4

entities, served as officer for, including but not limited to, Downtown STA, LLC, Jackson STA, LLC, Sterling Heights STA, LLC, Lathrup STA, LLC, E Pointe Pizza, LLC, Benstein Pizza, LLC, Sparta Pizza, LLC, Oak Park Pizza, LLC, Saginaw Pizza 1217, LLC, Jension STA, LLC, and Luxor Pizza, LLC and held managerial responsibilities and substantial control over terms and conditions of Defendants' delivery drivers' work, pay and reimbursement. Further, he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records.

12.    Defendant Ronnie Asmar Jr. is an owner/member of Defendant corporate entities, served as officer for, including but not limited to, Auburn Hills STA, LLC, Brighton STA, LLC, Caledonia Pizza, LLC, and Saginaw Pizza 1247, LLC, and held managerial responsibilities and substantial control over terms and conditions of Defendants' delivery drivers' payroll, and reimbursement.

13.    Defendant Desiree Asmar is an owner/member of Defendant corporate entities, served as officer of Defendants including but not limited to RDR Services, LLC, and held managerial responsibilities and substantial control and responsibility over terms and conditions of Defendants' delivery drivers' payroll, reimbursement work.

14.    Defendant Patrick Fisher is an owner/member of Defendant corporate entities, served as officer of corporate Defendants including but not limited to Fountain Oaks, LLC, and held managerial responsibilities and substantial control and responsibility over terms and conditions of Defendants' delivery drivers' payroll, reimbursement, and work.

15.    Defendant RDR Services, LLC is a limited liability company maintaining its principal place of business at 29850 Northwestern Hwy. Ste. 200, Southfield, MI, 48034, which is in the Eastern District of Michigan. RDR employs regional supervisors and other managers responsible for management and oversight of Defendant Stores, setting driver reimbursement rates and generally responsible for paying delivery drivers in accordance with federal law.

16.    Defendant Fountain Oaks, LLC is a limited liability company maintaining its principal place of business at 29850 Northwestern Hwy. Ste. 200, Southfield, MI, 48034, which is in the Eastern District of Michigan. Fountain Oaks employs regional supervisors and other managers responsible for management and oversight of Defendant Stores, setting driver reimbursement rates and generally responsible for paying delivery drivers in accordance with federal law.

17.    Defendants Hayat Asmar, Randy Asmar, Ronnie Asmar, Desiree Asmar and Patrick Fisher, RDR Services, LLC, and Defendant Fountain Oaks, LLC were previously identified as Does 1-10 to be identified later through discovery as

corporate entities and/or individuals who, together with the other identified Defendants, form a single enterprise and/or constitute joint employers under the FLSA and state law or are otherwise liable for the conduct alleged. Plaintiff reserves the right to Amend further when/if additional Does are discovered through ongoing discovery.

18. Plaintiff James Barker was employed as a delivery driver at Defendants' store #1010 (located at 41728 West Ten Mile Road, Novi, Michigan) and store #1041 (located at 40420 Five Mile Road, Northville, Michigan) from November 1, 2017, to March 15, 2022.

19. Plaintiff Cheri Fritts was employed as a delivery driver at Defendants' store #1010 (located at 41728 West Ten Mile Road, Novi, Michigan) from January 12, 2019, to May 12, 2022.

20. Plaintiff Aryn Delaney was employed as a delivery driver at Defendants' store #1010 (located at 41728 West Ten Mile Road, Novi, Michigan), store #1037 (located at 6114 East Ten Mile Road, Warren, Michigan), store #1059 (located at 535 Griswold Street, STE 101, Detroit, Michigan), store #1068 (located at 29854 Northwestern Highway, Southfield, Michigan), and store #1077 (located at 2767 East Fourteen Mile Road, Sterling Heights, Michigan) from November 12, 2019, to October 1, 2022.

## General Allegations

### *Defendants' Business*

21.     Defendant STA Management, LLC, founded in 2009, at one time was the tenth largest Domino's Pizza franchisee in the nation and owned and operated numerous Domino's Pizza franchise stores in conjunction with other affiliated and commonly owned Defendant entities, including stores within this District.

22.     Defendant Amer Asmar, Hayat Asmar, Randy Asmar, Ronnie Asmar, Desiree Asmar and Patrick Fisher are owners, officers, and/or directors of corporate Defendant STA Management, LLC, Defendant Stores, Defendant Northwest Professionals, LLC, Defendant RDR Services, LLC, and Defendant Fountain Oaks, LLC.

23.     Defendant Asmar, Hayat Asmar, Randy Asmar, Ronnie Asmar, Desiree Asmar and Patrick Fisher and individual Does are liable under the FLSA broad definition of "employer" because they own the Defendant entities, have operational control responsibility of the Defendant entities, ultimately control significant aspects of the Defendant entities' day-to-day functions, ultimately control the manner and methods of employees' work, and/or ultimately control compensation of employees and Defendants' pay practices.

24.     Defendants constitute a joint enterprise and apply the same pay practices to their delivery drivers across stores.

25.     Defendants employ or employed delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

### Defendants' Flawed Automobile Reimbursement Policy

26.     Defendants require their delivery drivers to maintain and pay for safe, legally operable, and insured automobiles when delivering pizzas and other food items.

27.     Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizzas and other food items for the primary benefit of Defendants.

28.     Defendants' delivery driver reimbursement policy reimburses drivers on a per-delivery basis, but the per-delivery reimbursement equates to below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle. This flawed policy applies to all of Defendants' delivery drivers.

29.     The result of Defendants' delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of their delivery drivers' automobile expenses.

30.     During the applicable FLSA limitations period, the IRS mileage

reimbursement rate ranged between $0.58 and $0.625 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.618 and $0.72 per mile during the same period for drivers who drive 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for business use.

31.    However, the driving conditions associated with the pizza delivery business cause even more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendants' delivery drivers experience lower gas mileage and higher repair costs than the average driver used to generate the above calculations. The nature of the delivery business includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

32.    Defendants' reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly fail to reimburse their delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

33.    Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the hourly wages paid to Plaintiff and Defendants' other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

34.    Defendants fail to reasonably approximate the amount of their drivers' automobile expenses to such an extent that their drivers' net wages are diminished beneath the federal minimum wage requirements.

35.    In sum, Defendants' reimbursement policy fails to reflect the realities of delivery drivers' automobile expenses.

### Defendants' Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations

36.    Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

37.    The federal minimum wage has been $7.25 per hour since July 24, 2009, and has periodically increased.

38.    During the relevant time period, the IRS business mileage reimbursement rate ranged between $0.58 and $0.625 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.

39.     Plaintiff James Barker was paid $7.40 per hour during his employment with Defendants, including a tip credit applicable to the time he performed deliveries.

40.     During the time Plaintiff Barker worked for Defendants as a delivery driver, he was reimbursed $1.14 per delivery.

41.     On average, Plaintiff Barker's roundtrip distance per delivery was approximately four miles. Thus, Plaintiff Barker was paid at a rate of approximately $0.285 per mile ($ 1.14/ 4 miles).

42.     Using the lowest IRS rate per mile driven in effect during that period as a reasonable approximation of Plaintiff Barker's automobile expenses, every mile driven on the job decreased his net wages by at least $0.295 per mile ($0.58 - $0.285).

43.     Plaintiff Barker regularly made three or more deliveries per hour. Thus, using even a conservative under-estimate of Plaintiff Barker's actual expenses and damages, every hour on the job decreased his net wages by at least $3.54 ($0.295 x 12 miles driven per hour) resulting in a net hourly wage of approximately $3.86 ($7.40 nominal hourly pay rate - $3.54 per hour "kickback" to Defendants = $3.86 net hourly wage).

44.     Plaintiff Cheri Fritts was paid $7.40 per hour during her employment with Defendants, including a tip credit applicable to the time she performed

deliveries.

45.     During the time Plaintiff Fritts worked for Defendants as a delivery driver, she was reimbursed $1.10 per delivery.

46.     On average, Plaintiff Fritts roundtrip distance per delivery was approximately four miles. Thus, Plaintiff was paid at a rate of approximately $0.275 per mile ($1.10/ 4 miles).

47.     Using the lowest IRS rate per mile driven in effect during that period as a reasonable approximation of Plaintiff Fritts' automobile expenses, every mile driven on the job decreased her net wages by at least $0.305 per mile ($0.58 - $0.275).

48.     Plaintiffs Fritts regularly made three or more deliveries per hour. Thus, using even a conservative under-estimate of actual expenses and damages, every hour on the job decreased her net wages by at least $3.66 ($0.305 x 12 miles driven per hour). resulting in a net hourly wage of approximately $3.84 ($7.50 nominal hourly pay rate - $3.66 per hour "kickback" to Defendants = $3.84 net hourly wage).

49.     Plaintiff Aryn Delaney was paid $7.25 per hour while in the store and $5.00 per hour while making deliveries during her employment with Defendants, including a tip credit applicable to the time she performed deliveries.

50.     During the time that Plaintiff Delaney worked for Defendants as a delivery driver, she was reimbursed an average of $2.00 per delivery.

13

51.     On average, Plaintiff Delaney's roundtrip distance per delivery was approximately five miles.

52.     Using the lowest IRS rate per mile driven in effect during that period as a reasonable approximation of Plaintiff Delaney's automobile expenses, every mile driven on the job decreased his net wages by at least $0.18 per mile ($0.58 - $0.40).

53.     Plaintiff Delaney regularly made four deliveries per hour. Thus, using even a conservative under-estimate of actual expenses and damages, every hour on the job decreased Plaintiff Delaney's net wages by at least $3.60 ($0.18 x 25 driven per hour) resulting in a net hourly wage of approximately $1.40 ($5.00 out-of-store hourly pay rate - $3.60 per hour "kickback" to Defendants = $1.40 net hourly wage).

54.     All of Defendants' delivery drivers had similar experiences to those of the Plaintiffs. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

55.     Because Defendants paid their drivers a gross hourly wage very close to the federal minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

56.     While the amount of Defendants' actual reimbursements per delivery may vary over time, Defendants are relying on the same flawed policy with respect to all delivery drivers at all of their other Domino's Pizza stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

57.     Defendants' low reimbursement rates were a frequent complaint of Defendants' delivery drivers, yet Defendants continued to reimburse at a rate much less than any reasonable approximation of delivery drivers' automobile expenses. Additionally, Defendants continued to pay their delivery drivers' wages below the federal minimum wage, despite periodic minimum wage increases from 2016 to 2019.

58.     The net effect of Defendants' flawed reimbursement policy is that Defendants have willfully failed to pay the minimum wage to their delivery drivers. Defendants thereby enjoy ill-gained profits at the expense of their employees.

### Class and Collective Action Allegations

59.     Plaintiffs bring this FLSA claim as an "opt-in" collective action on behalf of themselves and the following class of potential FLSA opt-in litigants (the "Collective"):

All individuals who delivered pizza and other food items for any

of the Defendants using their own vehicles at any time since June 5, 2016.

60.     The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

61.     Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging Defendants' practice of failing to pay employees' federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via mail and electronic means.

62.     Plaintiffs and all of Defendants' delivery drivers are similarly situated in that:

a.   They have worked as delivery drivers for Defendants delivering pizzas and other food items to Defendants' customers;

b.   They have delivered pizzas and other food items using automobiles not owned or maintained by Defendants;

c.   Defendants required them to maintain these automobiles in a safe, legally operable, and insured condition;

d.   They incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of Defendants;

e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. They were subject to the same pay policies and practices of Defendants;

g. They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile, and thereby were systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h. They were reimbursed similar set amounts of automobile expenses per delivery; and

i. They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

63.    Plaintiffs bring Count III and IV as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and as the Class Representatives of the following persons (the "Class"):

> All individuals who delivered pizza and other food items for any of the Defendants using their own vehicles at any time since June 5, 2016.

64.    The state law claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

65.     The Class satisfies the numerosity standard as it consists of hundreds of persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

66.     Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation:

a.  Whether Defendants failed to pay Class members the minimum wage required by federal law;

b.  Whether Defendants failed to reasonably reimburse Class members for using their own vehicles to deliver Defendants' pizzas and other food items;

c.  Whether Defendants' formula and / or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement to the Class members; and

d.  Whether Defendants failed to keep accurate records of deductions from Class members' wages in violation of federal law.

67.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior to other available methods of

state law adjudication with respect to considerations of consistency, economy, efficiency, fairness, and equity.

68.    Plaintiffs' claims are typical of those of the Class in that:

a.    Plaintiffs and the Class worked as delivery drivers for Defendants delivering pizzas and other food items to Defendants' customers;

b.    Plaintiffs and the Class delivered pizzas and other food items using automobiles not owned or maintained by Defendants;

c.    Defendants required Plaintiffs and the Class to maintain these automobiles in a safe, legally operable, and insured condition;

d.    Plaintiffs and the Class incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of Defendants;

e.    Plaintiffs and the Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.    Plaintiffs and the Class were subject to the same pay policies and practices of Defendants;

g.    Plaintiffs and the Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby were systematically deprived of reasonably

approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h.  Plaintiffs and the Class were reimbursed similar set amounts of automobile expenses per delivery; and

i.  Plaintiffs and the Class were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

69.   A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Class.

70.   Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

71.   Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per

member of the Class, and there are no material difficulties impairing the management of a class action.

72.    It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

**Count I:**
**Violation of the Fair Labor Standards Act—Minimum Wage**

73.    Plaintiffs reassert and re-allege the allegations set forth above.

74.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

75.    Defendants are subject to the FLSA's minimum wage requirements as an enterprise engaged in interstate commerce, and their employees are engaged in commerce.

76.    At all relevant times herein, Plaintiffs and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

77.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiffs or other similarly situated delivery drivers.

78.     Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201-219, because Defendant failed to inform Plaintiffs and the putative Collective Action Members of the provisions of § 203(m) of the FLSA. Further, Defendants did not compensate employees to the full minimum wage when tips plus wages fell below the minimum wage rate.

79.     Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

80.     As alleged herein, Defendants have reimbursed delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

81.     Defendants knew or should have known that their pay and reimbursement policies result in failure to compensate delivery drivers at the federal minimum wage.

82.     Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiffs and other similarly

situated employees.

83.    As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

84.    Plaintiffs and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for whether, their conduct was unlawful.

## Count II:
## Violation of the Fair Labor Standards Act—Overtime

85.    Plaintiffs reassert and re-allege the allegations set forth above.

86.    Plaintiffs and all similarly situated employees were not exempt from overtime under the FLSA.

87.    At times relevant to this lawsuit, Plaintiffs and similarly situated employees worked in excess of 40 hours per seven-day work week as employees of Defendant.

88.    Defendants were required to pay Plaintiffs and similarly situated

employees time and one-half their respective regular rates of pay for all hours worked over 40 in each relevant seven-day workweek pursuant to 29 U.S.C. § 207(a)(1).

89.    Defendants failed to pay Plaintiffs and similarly situated employees one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit in violation of the FLSA.

90.    Defendants avoided paying overtime to Plaintiffs and similarly situated employees by distributing paychecks between multiple payroll checks for the same week.

91.    Plaintiffs and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants' Domino's Pizza stores.

92.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants not liable for liquidated damages, Plaintiffs and all similarly situated employees are

entitled to an award of prejudgment interest at the applicable legal rate.

93.     As a result of the aforesaid willful violations of the FLSA, overtime compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**Count III:**
**Violations of Michigan Wage Law—Minimum Wage**

94.     Plaintiffs reassert and re-allege the allegations set forth above.

95.     At all relevant times, Defendants have been and continue to be an "employer" within the meaning of the MI Comp L §408.471 *et seq.*

96.     At all relevant times, Defendants have employed, and continue to employ "employees", including Plaintiffs, within the meaning of the MI Comp L §408.471 *et seq.*

97.     Plaintiffs were employees of Defendants within the meaning of the MI Comp L §408.471 *et seq.*

98.     Pursuant to the MI Comp L §408.471 *et seq.*, Defendants were required to pay Plaintiffs and the Putative Plaintiffs all wages, when due, for all hours of work at hourly rates which exceeded the state minimum wage rate.

99.     At all relevant times, Defendants paid their drivers a cash wage less than the state minimum wage.

100.   Defendants were not eligible to avail themselves of the tipped minimum wage rate because Defendants failed to maintain records for all employers using the tip credit, failed to inform employees of such a policy, and Defendants did not compensate employees to the full minimum wage when tips plus wages fell below the minimum wage rate as required by MI Comp L § 408.414 *et seq.*

101.   Defendants were required to provide employees with advanced notice for wage deductions permissible by and in compliance with the MI Comp L § 408.471 *et seq.*

102.   Defendants failed to pay Plaintiffs and the Putative Plaintiffs reimbursements for travel expenses "as other amounts promised" under the MI Comp L § 408.471 *et seq.* and thus failed to comply with this statute and its accompanying administrative code.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Opt-In Plaintiffs collectively pray that this Honorable Court:

1.   Issue an Order certifying this action as a collective action under the FLSA and designate the above Plaintiffs as representative of all those similarly situated under the FLSA collective action;

2.   Issue an Order certifying this action as a collective action under the MI Comp L § 408.471 *et seq.* and designate the above Plaintiffs as representative of all

26

those similarly situated of the MI Comp L § 408.471 *et seq.* class;

3.  Award Plaintiffs and the Opt-In Plaintiffs actual damages for unpaid wages and liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs and the class as provided by the MI Comp L § 408.488 *et seq.* and pursuant to the FLSA, U.S.C. § 216(b);

4.  Award Plaintiffs and the Opt-In Plaintiffs pre- and post-judgment interest at the statutory rate as provided by the MI Comp L § 408.488 *et seq.* and pursuant to the FLSA, U.S.C. § 216(b);

5.  Award Plaintiffs and the Opt-In Plaintiffs attorneys' fees, costs, and disbursements as provided by the MI Comp L § 408.488 *et seq.* and pursuant to the FLSA, 29 U.S.C. § 216(b); and

6.  Award Plaintiffs and the Opt-In Plaintiffs further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Opt-In Plaintiffs hereby request a trial by jury of all issues triable by jury.

<div style="margin-left:40%">

Respectfully submitted,
BLANCHARD & WALKER, PLLC

/s/ David M. Blanchard
David M. Blanchard (P67190)
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313

</div>

blanchard@bwlawonline.com

FORESTER HAYNIE PLLC
Katherine Serrano
J. Forester
400 N. St. Paul St., Ste. 700
Dallas, Texas 75201
(214) 210-2100 phone
(214) 346-5909 fax
kserrano@foresterhaynie.com
jay@foresterhaynie.com

Dated: June 27, 2023                    *ATTORNEYS FOR PLAINTIFFS*